IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-348-H

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM &** |
| JAMES BRANCH, | ) | **RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's motion to suppress [DE #23], which has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Government filed a response in opposition to the motion to suppress. To further develop the record, the undersigned conducted an evidentiary hearing on April 20, 2016, at which the Government and Defendant, with counsel, appeared. Accordingly, the matter is now ripe for decision.

## STATEMENT OF THE CASE

On November 18, 2015, a federal grand jury returned a three-count indictment charging James Branch ("Branch") with: (1) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924; (2) possession of a sawed-off shotgun not registered in the National Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871; and (3) possession of a firearm with an obliterated serial number, in violation of 26 U.S.C. §§ 5842, 5861(h), and 5871.

On January 19, 2016, Branch filed the instant motion to suppress. Branch contends that he was subjected to an unlawful traffic stop and search and that evidence was seized in violation of the Fourth Amendment. He demands that any evidence obtained, including any inculpatory

statements made by him, be suppressed.  The government argues that the stop of Branch's vehicle was justified by reasonable, articulable suspicion and probable case, and the search of the vehicle was based on probable cause following the discovery of marijuana and open containers of alcohol..

**STATEMENT OF THE FACTS**

At the evidentiary hearing on Branch's motion, the court heard the testimony of Deputy Matthew Johnson, Lieutenant Brian Clifton, and Deputy Billy Britt, all of whom are employed with the Johnston County Sheriff's Department.  Based upon the officers' testimony and documentary evidence, the undersigned makes the following findings of fact.

At approximately 3:00 to 3:30 p.m. on June 4, 2015, Deputy Johnson was sitting in his patrol car at the intersection of North Carolina Highway 222 and Barnes Lake Road in northeastern Johnston County.  While Deputy Johnson was observing traffic, a gold Mercury Cougar turned onto Lake Barnes Road from Highway 222.  Deputy Johnson was positioned on the driver's side of the Cougar with about one traffic lane in between them, when he saw the driver was not wearing a seat belt.  Deputy Johnson pulled onto Barnes Lake Road and caught up to the vehicle as it turned into a driveway.  Deputy Johnson activated his emergency lights and pulled into the driveway as the vehicle came to a stop.  The area in which the stop occurred is in the vicinity of an open-air drug market.

The driver exited the Cougar and began to walk quickly away from the vehicle.  Deputy Johnson jumped out of his patrol car and told the driver to stop.  The driver stopped, but Deputy Johnson had to ask him twice to get back into the Cougar before the driver complied.  The driver also gave Deputy Johnson a wide berth when walking back to the vehicle, as if he did not want to get close to Deputy Johnson.  As the driver was getting into the vehicle, Deputy Johnson saw a clear liquor bottle that was no longer sealed.  Deputy Johnson also smelled an odor of alcohol

coming from the driver and the interior of the car and noted the driver's speech was slurred. A female was seated in the passenger seat.

Once the driver returned to the driver's seat of the Cougar, Deputy Johnson asked for the driver's license and registration. The driver did not have a license on him and could not locate the registration. Deputy Johnson then asked the driver to exit the Cougar and have a seat in the front passenger's seat of his patrol car. Deputy Clifton arrived as the driver was getting into the patrol car. The driver gave his name and date of birth, indicating he was James Branch. Deputy Johnson ran Branch's information and discovered he was driving on a suspended license and the vehicle had a fictitious registration plate. Branch explained he had recently purchased the vehicle and that his wife was supposed to have registered it.. Deputy Johnson asked if the female passenger was his wife, and Branch responded that she was his daughter.

Deputy Johnson got out of the patrol car to check the VIN number of the Cougar. Deputy Johnson removed the bottle of liquor placing it on the roof of the vehicle and asked the female for her identification. The female stated her name was Lawana Kelly and that she and Branch were good friends. Deputy Johnson returned to his patrol vehicle and confirmed the Cougar was not stolen. He then wrote Branch three citations for possession of an open container of alcohol, failure to wear a seatbelt, and fictitious registration.

Because of the odor of alcohol from Branch's person, his slurred speech, and his avoidance of Deputy Johnson upon being stopped, Deputy Johnson asked Branch to submit to a portable breath test and standard field sobriety tests. Branch performed all of the tests and provided two samples on the PBT that were positive for the presence of alcohol. Deputy Johnson came to that opinion that Branch "had consumed a sufficient quantity of an impairing substance so that his mental and physical faculties were appreciably impaired." (Mot. to Suppress, Ex. 2 [DE #23] at

3

4.) Deputy Johnson placed Branch under arrest and asked for consent to search the vehicle, which Branch denied. Deputy Johnson then informed Branch that Lieutenant Clifton was going to have his K-9 walk around the vehicle.

Deputy Johnson asked the female to exit the vehicle. The female exited, leaving the passenger door open. No one requested that she leave the door open or gave her any instructions regarding the door. Lieutenant Clifton had his K-9 walk around the vehicle starting at the rear and going up the passenger side of the vehicle. The K-9 entered the car through the open passenger door and alerted on a woman's purse on the passenger's seat, indicating the presence of narcotics. Neither the officers nor the K-9 manipulated the door for the K-9 to enter the vehicle. Lieutenant Clifton informed Deputy Johnson that the K-9 had alerted on the purse, and Deputy Johnson conducted a search of the purse while Lieutenant Clifton stood with Branch and the female. The remains of a marijuana cigar were found in the purse, but no identification was found in the purse.

Deputy Johnson returned to his patrol car to run the female's information under the name Lawana Kelly. The picture in the DMV records for Lawana Kelly did not match the female. Deputy Johnson asked the female to come to his driver side door and showed the picture to her. After Deputy Johnson asked the female her exact age, the female became agitated. Deputy Johnson informed her that she was being detained until her identity could be determined. The female tried to run away from Deputy Johnson, and he had to tackle her to the ground in order to place her in handcuffs. The female eventually calmed down and stated her name was Samantha Bettis and that she thought she had a warrant out for her arrest.

Around this time, Deputy Billy Britt and another deputy arrived on scene. Lieutenant Clifton searched the remainder of the vehicle. Lieutenant Clifton found a sawed-off shot gun in a bag in the trunk of the vehicle, which he handed over to Deputy Johnson. Through the open

4

passenger window of Deputy Johnson's patrol vehicle, Branch stated that the gun was not his. Bettis stated that it was his and that he needed to tell the truth. Branch later stated he had picked the gun up to work on it for someone and that there was no firing pin in the shotgun. Bettis was read her *Miranda* rights, which she said she understood and subsequently waived. She stated that Branch had sanded the barrel to remove rust and had attempted to clean up the shotgun.

Branch and Bettis were transported separately to the Johnston County Jail for further processing. While being transported by Deputy Britt, Bettis stated she could not believe that Branch was going to get her "jammed up."

## DISCUSSION

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures "of their persons, houses, papers, and effects." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Generally, an automobile stop is reasonable if supported by probable cause to believe a traffic violation has been committed, *id.* at 810, or by reasonable suspicion that criminal activity may be afoot, *United States v. Arvizu*, 534 U.S. 266, 273 (2002). An officer may further detain the vehicle's occupants for investigative purposes. *Whren*, 517 U.S. at 810. This is true even where the traffic stop is pretextual. *Id.* at 811-13. An officer's subjective intentions or ulterior motives are irrelevant to the Fourth Amendment issue. *Id.*; *United States v. Hammond*, 353 Fed. App'x 877, 879 (4th Cir. 2009) (determining that an officer's motive is irrelevant to a Fourth Amendment claim but may be relevant to an equal protection claim).

5

Moreover, the Fourth Amendment generally requires that law enforcement obtain a warrant before performing a search. However, under the automobile exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam); *see also Carroll v. United States*, 267 U.S. 132, 153 (1925). Once a law enforcement officer has probable cause, he may "search every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). Probable cause "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The court must examine the facts "from the standpoint of an objectively reasonable police officer," giving "due weight to inferences drawn from those facts by . . . local law enforcement officers." *Id.* at 696.

Here, upon observing Branch without a seatbelt while driving, Deputy Johnson had probable cause to stop the vehicle. *See* N.C. Gen Stat. § 20-135.2A ("[E]ach occupant of a motor vehicle manufactured with seat belts shall have a seatbelt properly fastened about his or her body at all times when the vehicle is in forward motion on a street or highway in this State.")

Deputy Johnson and Lieutenant Clifton also had probable cause to conduct a search of the vehicle. Both officers stated that the vehicle was stopped in the vicinity of an open-air drug market. Upon Deputy Johnson passing a car to pursue Branch for a traffic violation, Branch pulled into a driveway, immediately exited the vehicle, and began walking away. Branch's vehicle had fictitious tags, and Branch and the female passenger gave different stories as to how they knew each other. The female stated she was a friend of Branch's, and Branch stated she was his daughter. The female also gave Deputy Johnson a false name when he questioned her concerning her

6

identity. Upon a canine sniff of the vehicle, the canine alerted on the female's purse, and a small amount of marijuana was found inside.

Based on the facts available to the officers at the time of the investigation, officers had probable cause to search the passenger compartment and trunk of Branch's vehicle for contraband. Accordingly, Branch's motion to suppress the evidence seized from his vehicle and the statements he made thereafter should be denied.

## CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's Motion to Suppress [DE #23] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until June 20, 2016, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may

bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 1st day of June 2016.

_____
KIMBERLY A. SWANK
United States Magistrate Judge